Defendants contend that the Deputy Commissioner erred by finding and concluding that plaintiff sustained a loss in earning capacity. Defendants argue that it was not "medically necessary" for plaintiff to quit working for defendant-employer, in that defendant-employer provided plaintiff with suitable light duty work. However, after careful consideration, the Full Commission has determined that defendants' allegations are without merit, and that the record supports the award of the deputy. Therefore, the June 20, 1994 Opinion and Award is accordingly HEREBY AFFIRMED.
* * * * * * * * * * *
The Full Commission finds as facts and concludes as matters of law the following which were entered into by the parties as
STIPULATIONS
1. The parties are subject to and bound by the provisions of the Workers' Compensation Act.
2. The employer-employee relationship existed between plaintiff and defendant-employer Becton Dickinson Research Center through September 27, 1991.
3. Travelers Insurance Company was the compensation carrier on the risk for defendant-employer Becton Dickinson.
4. The employer-employee relationship existed between plaintiff and defendant-employer Image Associates, Incorporated beginning November 4, 1991. [NOW DISMISSED.]
5. Auto Owners Mutual Insurance Company was the compensation carrier on the risk for defendant-employer Image Associates. [NOW DISMISSED.]
The parties also stipulated to medical records from Duke marked Plaintiff's Exhibit 1, records from Hand and Orthopaedic Rehabilitation Associates marked Plaintiff's Exhibit 2, and a Form 22.
* * * * * * * * * * *
Based upon all of the competent evidence in the record, the Full Commission makes the following
FINDINGS OF FACT
1. Plaintiff, who is 40 years old and has a Ph.D. in human genetics, was employed by defendant-employer Becton Dickinson beginning in October 1988 as a scientist. Plaintiff's average weekly wage with defendant-employer Becton Dickinson was $878.61.
2. Plaintiff was not hired at defendant-employer Becton Dickinson just to use her mind. Using a pipette in her job was not optional. In fact, representatives of Becton Dickinson admitted at the hearing that not being able to use a pipette would severely restrict the number of jobs plaintiff might be able to do at Becton Dickinson. Kate Slaven could not even think of a scientist job at Becton Dickinson that would not require pipetting, unless it was specially created for plaintiff.
3. Plaintiff's job with defendant-employer Becton Dickinson involved frequent use of a thumb activated pipette which she used in her right hand. Pipetting required two strokes of the pipette plunger — one to draw up the reagent into the pipette and the other to release the reagent into the well. The experience plaintiff worked on required that she pipette these reagents into a small plate that contained 96 little wells. More than one type of reagent might have to go into each well. Some experiments could involve ten or more plates. It was precision work which required a steady hand to pipette reagents into these little wells. Plaintiff would make thousands of pipetting motions a day, at least three days a week. When she was not pipetting she was frequently using her right hand to key in the data from the experiments on a computer.
4. In May 1991 plaintiff began to notice pain in her right thumb and a tired feeling in her right hand. Generally the pain would subside within an hour of stopping pipetting. When her symptoms progressed to the point that she could barely move her thumb and the pain would not go away, she reported her complaints to Buddy Bowman, the safety manager.
5. In June 1991 plaintiff came under the care of the physicians at the Duke Department of Occupational and Environmental Medicine, where she was diagnosed as suffering right hand cumulative trauma disorder. While under the care of the doctors at Duke plaintiff was restricted to work with no pipetting and limited keyboard use.
6. On August 15, 1991 plaintiff voluntarily resigned her employment with defendant-employer Becton Dickinson, primarily out of concern for the condition of her right hand. The resignation was effective September 27, 1991. Up to that point defendant-employer Becton Dickinson did make available to plaintiff light duty work suitable to her capacity. Plaintiff's doctors at Duke had not advised her to resign, and in fact Dr. Frazier felt at the time that it was too early to know what kind of permanent pipetting restrictions plaintiff might have.
7. Plaintiff reached maximum medical improvement on November 14, 1991. She retains a two percent permanent disability to her right hand. When she reached maximum medical improvement, she had permanent restrictions in the use of her right hand, including no pipetting.
8. Unless defendant-employer Becton Dickinson were to fashion a special job for plaintiff as a scientist which would not involve any pipetting, plaintiff would not be able to return to work in the same environment earning the same wages. However, up until the time that she reached maximum medical improvement and was given the permanent no pipetting restriction, presumably defendant-employer Becton Dickinson would have continued to make light duty work within her restrictions available to her.
9. On November 4, 1991 plaintiff went to work for defendant-employer Image Associates doing graphics on a computer. This job does not involve repetitive motion with her right hand and defendant-employer Image Associates has gone to great lengths to ergonomically design plaintiff's work station so as not to aggravate her right hand condition. Plaintiff has not been injuriously exposed to the hazards of repetitive motion work using her right hand in her employment with defendant-employer Image Associates. Moreover, plaintiff's employment with defendant-employer Image Associates does not place her at an increased risk of developing cumulative trauma disorder or overuse syndrome.
10. Plaintiff's employment with defendant-employer Becton Dickinson as a scientist placed her at an increased risk of developing a cumulative trauma disorder using a pipette, as compared to members of the general public not so employed.
11. Plaintiff's employment with defendant-employer Becton Dickinson as a scientist repetitively using a pipette was a significant contributing factor to her development of right hand cumulative trauma disorder.
12. Since reaching maximum medical improvement on November 14, 1991, at which point it was known that plaintiff could not expect to return to work as a scientist using a pipette, plaintiff lost the capacity to earn the same wages she was earning at the time of the injury in the same employment. Plaintiff now retains the capacity to earn an average weekly wage of $610.66.
* * * * * * * * * * *
Based upon the findings of fact, the Full Commission makes the following
CONCLUSIONS OF LAW
1. Plaintiff's cumulative trauma disorder is a occupational disease compensable within the meaning of N.C.G.S. § 97-53(13) inasmuch as plaintiff's employment with defendant-employer Becton Dickinson was a significant contributing factor to her development of cumulative trauma disorder and placed her at an increased risk of developing cumulative trauma disorder.
2. Plaintiff's employment with defendant-employer Image Associates did not injuriously expose her to the hazards of repetitive or cumulative trauma and further did not place her at an increased risk of developing a cumulative trauma disorder.
3. While defendant-employer Becton Dickinson was for some time willing to make allowances for plaintiff's no pipetting restriction, at the point that that restriction became permanent plaintiff lost the capacity to earn the same wages she was earning at the time of the injury in the same employment, and even were one to speculate that defendant-employer Becton Dickinson would have continued to make some kind of work available for plaintiff, that work would have been a makeshift job specially fashioned for plaintiff which she would not be able to obtain as a scientist elsewhere. Therefore, as of the date plaintiff reached maximum medical improvement on November 14, 1991, she suffered a partial loss of wage earning capacity and from that point hence has retained the capacity to earn $610.66 per week. Therefore, pursuant to N.C.G.S. § 97-30, she is entitled to two-thirds of the difference between her average weekly wage of $878.61 and her current average weekly wage of $610.66 per week, to continue to a date not to exceed 300 weeks from the date of injury.
* * * * * * * * * * *
Based upon all of the foregoing, the Full Commission enters the following
AWARD
1. Defendant-carrier Travelers Insurance Company shall pay plaintiff weekly benefits pursuant to N.C.G.S. § 97-30 at the rate of $178.64 per week commencing November 14, 1991 and to continue until plaintiff regains her former earning capacity or at the latest 300 weeks from the date of injury.
2. Defendant-carrier Travelers Insurance Company shall pay the costs.
3. Defendant-carrier Travelers Insurance Company shall pay an expert witness fee in the amount of $525.00 to Dr. Frazier.
This the _____ day of __________________________, 1994.
 S/ ______________________________ JAMES J. BOOKER COMMISSIONER
CONCURRING:
S/ __________________ COY M. VANCE COMMISSIONER
S/ __________________ DIANNE C. SELLERS COMMISSIONER
JJB:mj 12/22/94